UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

GEORGII TSOI,

                    Plaintiff,          **COMPLAINT**
         -against-                      Index No.:

POLINA PUSHKAREVA,

                    Defendant.

## COMPLAINT AND DEMAND FOR A JURY TRIAL

Plaintiff, GEORGII TSOI, (hereinafter referred to as "Plaintiff") by and through his attorney, SMITH HOKE, PLLC as and for his Verified Complaint against Defendant, POLINA PUSHKAREVA alleges as follows:

### PARTIES

1.   Plaintiff is an individual who is domiciled in Kings County, New York, and was so domiciled during all relevant periods.

2.   Plaintiff worked for Defendant as a personal assistant from February 2021 through August 2021.

3.   Upon information and belief, Defendant is an individual domiciled in New York County, New York.

4.   Upon information and belief, Defendant has described herself as a social media influencer, actress, and Instagram blogger.

### JURISDICTION AND VENUE

5.   This Court has subject matter jurisdiction over this matter through federal question jurisdiction, along with supplemental jurisdiction over the state law claims.

6.   Plaintiff is domiciled in New York.

7.   The court has personal jurisdiction over the Defendant, as she resides in New York, transacts business in New York, employed Plaintiff in New York, and the causes of action arise from the same.

8.   Venue is proper in the Southern District of New York because Plaintiff and Defendant reside in the district, and the Defendant employed the Plaintiff in the district.

## FACTS

11.   On or about December of 2020, Plaintiff interviewed for the position of personal assistant to the Defendant and was hired on or about February 3, 2021.

12.   When he was hired, he was never given any paperwork stating his expected salary, the hours he was to work, the schedule of his payment, or the method of payment. He was never given any notices in accordance with Federal or New York State labor law, a W-2, or any tax forms.

13.   When he was hired, Plaintiff was promised a salary of $3,500 per month.

14.   For the month of February of 2021, Plaintiff was paid $2,500.   He was paid $3,000 for his work in March of 2021.   He was paid $3,500 a month during April, May, and June of 2021.

15.   He was not paid for his work during July and August of 2021.

16.   When he was hired, he understood that he would be working 6 days a week from 10:00 a.m. to 5:00 p.m.

17.   Once Plaintiff began working, however, Defendant insisted that he work much longer days.   He often worked 6 days a week from 10:00am to 8:00pm or 9:00pm.   His work day varied based on the Defendant's whims.   Some mornings he was expected to work at 5:00am, other days he was expected to work well into the night.   If the Plaintiff was

traveling with the Defendant, he was expected to work from when he woke up until when he went to bed.

18. Plaintiff was not paid overtime.

19. Plaintiff was given no sick time, paid or unpaid.

20. Once a month, Defendant would message Plaintiff and let him know that he could withdraw a certain amount of money out of her bank account as his salary for the month.

21. He was not informed what dates the pay covered, or what the rate of pay was.   He was never given a paystub or a receipt.   No taxes were withheld.

22. Plaintiff's duties varied from week to week.   He was tasked with monitoring Defendant's social media accounts, responding to text messages, managing her schedule, taking pictures of her for her social media posts, filming videos for her online courses, dealing with all paperwork, shopping, taking care of her dog, house sitting, and cooking meals.

23. While he occasionally house-sat for Defendant, he was not a residential employee.

24. In April of 2021, Defendant decided that she wanted to buy a house in Los Angeles, and began working with a real estate agent.

25. Plaintiff flew with Defendant to Los Angeles to search for a house and engaged in an online search.

26. In July of 2021, Defendant saw a house online that she was interested in, and asked Plaintiff to prepare the paperwork.   She was in Europe at the time.

27. Plaintiff began the paperwork and, at the direction of Defendant, sent in a security deposit of $69,000.

28. During this process, Plaintiff became aware that Defendant committed acts of fraud while

applying for financing for the purchase of the house, including altering bank statements to make it appear as though she was wealthier than she actually was.

29. After she returned from Europe, Defendant changed her mind, and told Plaintiff to discontinue the purchase of the house and recover her money.

30. Plaintiff informed Defendant that they were too far in the process to recover the money, and that the seller would not return her security deposit.

31. Around this time, Defendant asked Plaintiff to sign a Non-Disclosure Agreement.

32. Before signing it, Plaintiff asked his attorney to review the Non-Disclosure Agreement.

33. Plaintiff's attorney advised him not to sign it, as it included bizarre and restrictive conditions, such as a $200,000 fine every time Plaintiff spoke of Defendant in public.

34. Defendant became enraged Plaintiff would not sign the Non-Disclosure Agreement.

35. Plaintiff had knowledge that Defendant had forged documents in her mortgage application for the house in Los Angeles.

36. As he had worked as her personal assistant, Defendant had also given him access to intimate details of Defendant's life.

37. Upon information and belief, Defendant considered herself a public figure.  As a so-called social media "influencer" and Instagram blogger, Defendant's income and career was based on her number of social media followers.

38. Defendant's reputation on social media sites, and so-called "influencer" status, was based on the perception that Defendant was incredibly wealthy, owned homes all over the world, and lived a life of luxury.

39. Part of her social media persona was that of a successful businesswoman, who owned several companies and with loyal and happy employees.  She tried to gain followers on

her social media accounts by offering advice how others could follow her career path.

40. She also made money from online courses she sold to her followers, offering to teach others how to be a social media manager, digital designer, and a successful businesswoman.

41. Plaintiff had information that would destroy that reputation, and show that her social media persona was a fraud.

42. Plaintiff had information that Defendant's finances were precarious, that at times she had to ask to borrow money from him, that she only employed a few people who she failed to pay even a minimum wage, and that she committed fraud because she could not afford the house she was attempting to buy in Los Angeles.

43. Plaintiff was not paid in July or August.   He requested his missing wages, but she did not pay him.

44. He asked for overtime pay for those hours he worked beyond forty hours a week since February.   Defendant did not pay him for any overtime work.

45. Defendant threatened that she had the money to pay for lawyers and Plaintiff did not, and that she would ruin his life.   These statements were recorded.

46. Defendant threated that Plaintiff would be sent to jail, and then she would have him deported.   These statements were recorded.

47. Plaintiff is a legal immigrant, originally from Russia.   He received authorization to work legally in this country in August of 2020.

48. After days of threats, Defendant's other assistant called Plaintiff for all the contact information for Defendant's associates that Plaintiff had used during his employment and informed him that he was no longer welcome.

49. Plaintiff asked about his unpaid salary for July and August of 2021.  Defendant's other assistant did not have an answer for him.

50. After Defendant refused to pay Plaintiff, he resigned in late August of 2021.

51. Plaintiff was never paid for his work for seven weeks over July and August of 2021, when he worked six days a week for on average eleven hours a day.

52. Plaintiff was never paid any overtime for his work from February through August of 2021.

53. After calculating his hours and salary earned, Plaintiff realized that he was not even payed minimum wage for his work.

## AS AND FOR A FIRST CAUSE OF ACTION AGAINST DEFENDANTS: VIOLATIONS OF THE FAIR LABOR STANDARDS ACT ("FLSA")

54. Plaintiff repeats and realleges all prior allegations as if fully set forth below.

55. The FLSA requires that all employees be paid

56. Defendant refused to pay Plaintiff all earned wages in July and August of 2021.

57. Defendant refused to pay Plaintiff any overtime wages for those hours worked beyond 40 hours per week.

58. As a result of the above-referenced violations of Federal law, the Plaintiff is entitled to recover damages consistent with 29 U.S.C. §216, including the full amount of the underpayment, attorney's fees, prejudgment interest, and liquidated damages.

## AS AND FOR A SECOND CAUSE OF ACTION VIOLATION OF NEW YORK LABOR LAW §191

59. Plaintiff repeats and realleges all prior allegations as if fully set forth below.

60. New York Labor Law §191 requires that all employees be paid the wages earned in accordance with the agreed terms of employment, but not less frequently than semi-monthly.

61. Plaintiff was not paid for seven weeks' worth of labor during the months of July and August of 2021.

62. Plaintiff was paid monthly from February through June 2021.

63. As a result of the above-referenced violations of New York Law, the Plaintiff is entitled to recover damages consistent with New York Labor Law §198, including the full amount of the underpayment, attorney's fees, prejudgment interest, and liquidated damages equal to three hundred percent of the total amount of wages underpaid for the Defendants' willful conduct.

**AS AND FOR A THIRD CAUSE OF ACTION**
**VIOLATION OF NEW YORK LABOR LAW §195**

64. Plaintiffs repeat and reallege all prior allegations as if fully set forth below.

65. New York Labor Law §195(1) mandates that all employers disclose in writing the manner in which an employee is compensated and the employee's rate of pay, among other things.

66. Such written agreement was never executed between the Plaintiff and the Defendant.

67. New York Labor Law §195(3) requires employers furnish each employee with a statement with every payment of wages, listing, among other things, the dates of work covered by the payment of wages, and the rates of pay and the basis thereof.

68. The Defendant did not provide any such statements to Plaintiff.

69. New York Labor Law §195(4) requires employers to establish, maintain, and preserve

for six years true and accurate payroll records, including the regular rate of pay, the overtime rate of pay, the number of regular hours worked, and the number of overtime hours worked.

70.  The Defendant has failed to maintain such records.

71.  The Defendant routinely and customarily violated provisions of the New York Labor Law by refusing to provide Plaintiff with information regarding the terms and conditions of his employment.   Said conduct was willful.

72.  As a result of the above-referenced violations of New York Law, the Plaintiff is entitled to recover damages consistent with New York Labor Law §198, including fines up to $5,000 for violations of New York Labor Law §195(1), fines up to $5,000 for violations of New York Labor Law §195(3) costs, attorney's fees, for the Defendants' willful conduct.

## AS AND FOR A FOURTH CAUSE OF ACTION
## VIOLATION OF NEW YORK LABOR LAW §196-b

73.  Plaintiffs repeat and reallege all prior allegations as if fully set forth below.

74.  New York Labor Law §196-b mandates that employers of four or fewer employees must provide such employees with forty hours of unpaid sick leave per calendar year.

75.  Defendant did not offer Plaintiff any sick leave.

76.  As a result of the above-referenced violations of New York Law, the Plaintiff is entitled recover damages consistent with New York Labor Law §198.

## AS AND FOR A FIFTH CAUSE OF ACTION
## VIOLATION OF NEW YORK LABOR LAW §652

77. Plaintiff repeats and realleges all prior allegations as if fully set forth below.

78. Plaintiff was required to work 50 to 60 hours a week from February of 2021 through the third week in August of 2021.

79. In February of 2021 through June of 2021, he was paid either $2,500, $3,000, or $3,500 a month.

80. Even during the months that he was paid $3,500, Defendant was paying Plaintiff less than minimum wage.

81. Plaintiff was not paid a minimum wage for his work during July and August of 2021, as he was not paid at all.

82. The Defendant's refusal to pay the Plaintiff for his labor was willful and in bad faith.

83. As a result of the above-referenced violations of New York Law, the Plaintiff is entitled to recover damages consistent with New York Labor Law §663, including attorney's fees, costs, and liquidated damages for the Defendant's willful conduct.

## AS AND FOR A SIXTH CAUSE OF ACTION
## VIOLATION OF 12 N.Y.C.R.R. 142-2.2

84. Plaintiff repeats and realleges all prior allegations as if fully set forth below.

85. Plaintiff was required to work 50 to 60 hours a week.  Certain weeks, when traveling with Defendant, he was expected to work during all waking hours.

86. Plaintiff was not paid overtime for those hours worked in excess of forty hours a week.

## AS AND FOR A SEVENTH CAUSE OF ACTION
## VIOLATION OF NEW YORK LABOR LAW §215

87. Plaintiff repeats and realleges all prior allegations as if fully set forth below.

88. Plaintiff is a legal immigrant from Russia.

89. Defendant knew of his immigration status.

90. Plaintiff complained to Defendant that he was not being paid for the work he had done, and was not paid for overtime, along with other Labor Law violations.

91. Defendant threatened to have Plaintiff deported.

92. Such retaliatory conduct is punishable by a civil fine of up to $20,000, and Plaintiff is due back pay, attorney's fees and costs, as well as liquidated damages up to $20,000.

## AS AND FOR A EIGHTH CAUSE OF ACTION AGAINST DEFENDANT: BREACH OF CONTRACT

93. Plaintiff repeats, reiterates, and realleges each and every allegation contained in the paragraphs above with the same force and effect as if fully set forth herein.

94. Plaintiff and Defendants entered into an oral contract for employment in February 2021, which established compensation parameters governing his employment.

95. Plaintiff was promised a monthly payment of between $2,500 and $3,000 a month, and was promised that he would only be required to work from 10:00am to 5:00pm six days a week.

96. The Defendant broke this promise and breached said contract when she failed to pay all earned salary.

97. The Defendant broke this promise and breached said contract when she required Plaintiff to work longer hours than agreed upon.

98. As a result of Defendant's breach, Plaintiff suffered damages resulting from unpaid wages and overtime wages.

99. As a result of Defendants' conduct, Plaintiff has sustained damages in excess of the amount necessary to sustain jurisdiction.

## AS AND FOR A NINTH CAUSE OF ACTION AGAINST DEFENDANT: UNJUST ENRICHMENT

100. Plaintiff repeats, reiterates, and realleges each and every allegation contained in the paragraphs above with the same force and effect as if fully set forth herein.

101. Plaintiff worked for Defendant without being paid for his labor through July and August of 2021.

102. Plaintiff successfully engaged in work for Defendant, including monitoring her social media accounts, filming videos for her online courses, running errands, and managing her schedule.

103. Defendant was financially enriched as a result of Plaintiff's efforts.

104. Defendants refused to pay Plaintiff all salary and overtime pay earned by him in the performance of his duties.

105. Defendant retained this financial benefit conferred by Plaintiff in his role as an employee, and in return offered her inadequate compensation or none at all.

106. As such, Defendant was unjustly enriched in the amount of unpaid salary and overtime.

## AS AND FOR A TENTH CAUSE OF ACTION PROMISSORY ESTOPPEL

107. Plaintiff repeats and realleges all prior allegations as if fully set forth below.

108. Plaintiff suffered damages as a result of Defendant's broken promises in an amount in excess of the monetary jurisdictional threshold of all lower Courts.

## JURY DEMAND

109.  Plaintiff demands a trial by jury of all issues so triable pursuant to Rule 38 of the Federal

Rules of Civil Procedure.

**WHEREFORE** Plaintiff demands judgment against the Defendant on the causes of action

arising under Federal Law and New York State Law pursuant to the remedies provided within,

along with liquidated damages, attorney's fees, punitive damages, costs and disbursements of this

action and such other, further and different relief as to the Court seems just and proper.

Dated: June 30, 2022
        Albany, New York

John J. Hoke, Esq.
**SMITH HOKE, PLLC**
Attorneys for Plaintiff
16 Wade Road
Latham, NY 12110
(518) 489-5600 (Telephone)
(518) 641-1286 (Facsimile)
*jhoke@smithhoke.com*